**554**

Stephen Roger WILSON, Appellant
in No. 84–3023,

v.

Co. George SCHILLINGER, Co. C.J.
Simpson, Captain Tohey, Hospital Supervisor Mr. Morrach, Education Supervisor Mr. Sattler, Miss Moore, Mr.
Petsock, Mr. Weyandt, Mr. Wigton and
E.J. Locher, Appellants in No. 83–5914.

Nos. 83–5914, 84–3023.

United States Court of Appeals,
Third Circuit.

July 31, 1985.

Before ALDISERT, Chief Judge, and
SEITZ, GIBBONS, HUNTER, WEIS,
GARTH, HIGGINBOTHAM, SLOVITER,
BECKER, STAPLETON MANSMANN,
and VAN DUSEN, Circuit Judges.

SUR PETITION FOR REHEARING

JAMES HUNTER, III, Circuit Judge.

The petition for rehearing filed by APPELLANT, STEPHEN ROGER WILSON in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Circuit Judges BECKER and STAPLETON believe that *St. Claire v. Cuyler* should be reconsidered and vote for rehearing.

STATEMENT BY CIRCUIT JUDGE GIBBONS SUR DENIAL PETITION FOR REHEARING

Stephen Roger Wilson, a Rastafarian whose sincerely held religious belief forbids sharp objects from touching his hair, is required by the court's opinion to cut his hair in compliance with Directive 807 despite the district court's finding that Wilson's exercise of his religion does not create a potential danger to prison security. The court reaches this outrageous conclusion by relying on our decision in *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir.1980). Because I believe that the "test" outlined in *St. Claire* misstates the decisions of the United States Supreme Court and fails to protect adequately free exercise of religion in prison, I dissent from the order refusing to rehear this case *in banc*.

In *St. Claire*, the court addressed a challenge by a practicing Muslim to prison regulations which forbade the prisoner from wearing garments of religious significance. The court based its analysis on decisions of the Supreme Court in several cases involving challenges to prison regulations grounded in the first amendment's guarantee of free speech. *St. Claire*, 634 F.2d at 112–14. The test set out by *St. Claire* is gleaned primarily from the language of *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) and *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Under the analysis of *St. Claire*, once the prisoner has demonstrated that a regulation infringes on exercise of a sincerely held religious belief, the prison administrator has the burden of production to show that the restriction is necessary to promote institutional security. This extremely light burden may be met by testimony by prison officials, so long as the opinions they express are held sincerely. *St. Claire*, 634 F.2d at 114. The prison administrator will meet the *St. Claire* burden even if the district court finds that his testimony is internally inconsistent and his opinions not credible. *Wilson v. Schillinger*, 761 F.2d 921, 926–27 (3d Cir., 1985); *Cole v. Flick*, 758 F.2d 124, 126–31 (3d Cir.1985). Once the state has met its burden of going forward by presenting a modicum of evidence—even incredible evidence—the burden of proof shifts to the prisoner to present "substantial evidence" that the restriction on his first amendment rights is an unreasonable response to the

asserted security interest. *St. Claire*, 634 F.2d at 115.

Under *St. Claire*, therefore, the prisoner has the burden of proving, not only that his first amendment rights have been violated, but also that the asserted state interest does not justify the infringement on constitutional rights. Furthermore, the prisoner is not permitted to make his proof by the preponderance of the evidence standard which is typical in a civil suit, but must show "substantial evidence," which is defined by the court as an extremely heavy burden. *Wilson*, 761 F.2d at 927; *Cole*, 758 F.2d at 128 n. 7. In *Wilson v. Schillinger* and *Cole v. Flick*, this court compounded the harshness of *St. Claire* by holding that the district court's conclusion that the prisoner had met his burden under *St. Claire* was a question of law to which this court owed no deference under Fed.R.Civ.P. 52. *Compare, e.g., Miller v. Fenton*, 741 F.2d 1456 (3d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985).

*St. Claire* and its progeny are entirely inconsistent with the Supreme Court caselaw they purport to interpret. *St. Claire v. Cuyler*, 643 F.2d 103 (3d Cir.1980) (Opinion sur denial of petition for rehearing) (Adams, J., joined by Seitz, Gibbons, Higginbotham, and Sloviter, JJ.). *St. Claire* adopted the language of *Pell* and *Jones*, but quoted this language without reference to the analysis central to each of these cases, *i.e.*, that the infringement on first amendment rights should be balanced against the prison's security concerns. *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 133, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977); *Pell v. Procunier*, 417 U.S. 817, 824, 94 S.Ct. 2800, 2805, 41 L.Ed.2d 495 (1974). By adopting the language of *Pell* and *Jones* out of the context of the particular balancing of interests conducted by the Supreme Court in those cases, the court in *St. Claire* opened the door for future misapplications of first amendment law in the prison context.

The embodiment of *St. Claire* as an objective "test" that provides suitable analysis of every first amendment claim by a prisoner misses the point of *Jones* and *Pell*. These cases require that the courts balance the infringed first amendment right against the asserted state interest. These cases further require that courts give proper deference to the decisions of prison administrators. *Jones*, 433 U.S. at 126, 97 S.Ct. at 2538. They do not require, however, the extraordinary deference to the judgment of administrators that *St. Claire* mandates. In *Jones*, the Supreme Court noted that the district court found that the testimony of corrections officers reflected beliefs that were "held 'sincerely' and were arguably correct." 433 U.S. at 127, 97 S.Ct. at 2538. This court incorporated that language in *St. Claire*, holding that any infringement on a prisoner's first amendment right is permissible if such testimony is given. 634 F.2d at 114. *Jones* did not intimate, however, that this showing would be sufficient in all cases; it merely held that, given the weak first amendment interest in that case,[1] "[w]hen weighed against the First Amendment rights asserted, these institutional reasons are sufficiently weighty to prevail." *Jones*, 433 U.S. at 133, 97 S.Ct. at 2541.

In *Pell*, the Court examined the proper balance between state interests and first amendment rights and held:

> [W]hen the issue involves a regulation limiting one of several means of communication by an inmate, the institutional objectives furthered by that regulation, and the measure of judicial deference owed to corrections officials in their attempt to serve those interests are relevant in gauging the validity of the regulation.

417 U.S. at 827, 94 S.Ct. at 2806. In these circumstances, when prison administrators use their expertise to set manageable limits on visitation, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment . . . ."

---

1. *Jones,* 433 U.S. at 130, 132, 97 S.Ct. at 2540, 2541.

*Pell,* 417 U.S. at 827, 94 S.Ct. at 2806. From this language *St. Claire* extrapolated a rule that places the burden on the prisoner to show by substantial evidence that the prison officials have exaggerated their response to the security concerns. *Pell,* however, does not require that such a burden be placed on the prisoner. It is unreasonable to require the prisoner to make such a proof because the state is in the best position to know and to present evidence of the justifications for its regulations. Furthermore, the court in *St. Claire* failed to point out that this statement was made in the context of the Court's balance of the limited first amendment rights implicated when alternate forms of expression were available against legitimate governmental interests. 417 U.S. at 824, 94 S.Ct. at 2805.

The ironic result of *St. Claire*'s misleading quotes from *Pell* and *Jones* is that those quotes are now used by this court in *Wilson v. Schillinger* to criticize the district court's use of the very balancing test mandated by the Supreme Court. *Wilson,* 761 F.2d at 927. The magistrate's report and recommendation, which were adopted by the district court, balanced "the state's interest in enforcing Administrative Directive 807 and the plaintiff's religious beliefs." Typescript at 7. The magistrate concluded that "the institutional ban on long hair conflicts with the plaintiff's sincerely held religious beliefs and ... the defendants have not demonstrated any valid need to curtail this religious exercise in the interest of sound administrative security regulations...." Typescript at 11. This analysis was clearly sound in light of the Supreme Court's pronouncements in *Pell* and *Jones.*

The balance struck by the Court in *Pell* and *Jones* is attributable in each case to the weakness of the right asserted and the strength of the state interests supporting the infringement. In both cases, the Court noted that the challenged prison regulation did not implicate first amendment concerns of the highest order. In *Pell* the challenged regulation restricted the prisoners' right to visit with persons other than family, including members of the press. *Pell,* 417 U.S. at 827, 94 S.Ct. at 2806. The

Court held that the availability of alternate means of communication, such as written correspondence, can legitimately be considered when weighing first amendment rights against other legitimate governmental interests. *Id.* at 824, 94 S.Ct. at 2805; *see also Jones,* 433 U.S. at 131, 97 S.Ct. at 2540. In *Jones,* the Court held that proscription of a prisoners' labor union "barely implicated" first amendment speech rights. *Jones,* 433 U.S. at 130, 97 S.Ct. at 2540. The Court in *Jones* further held that the first amendment associational rights curtailed by the challenged regulation were the sort of rights "necessarily curtailed by the realities of confinement." *Id.* at 132, 97 S.Ct. at 2541.

Wilson's right to free exercise of religion, by contrast, is not "barely implicated" by having his hair cut pursuant to Directive 807. Cutting Wilson's hair will directly violate an important tenet of his religion. The prison does not offer Wilson an alternative which will allow him to practice his religion in a satisfactory way. Finally, free exercise of religion is manifestly not a right that is "necessarily curtailed by the realities of confinement." On the contrary, if imprisonment is to serve any rehabilitative purpose, to the greatest extent possible believers must be permitted to practice the religion which may form the basis for a productive life outside the institution. *See Barnett v. Rodgers,* 410 F.2d 995, 1002 & n. 25 (D.C.Cir.1969).

It is beyond purview, then, that the first amendment right asserted by Wilson is more weighty than that asserted by the prisoners in *Jones* and *Pell.* The balance is further shifted from that reached by the Supreme Court because the security interests asserted by the prison officials in *Wilson v. Schillinger* are far less compelling than those raised in *Pell* and *Jones.* In *Pell,* the Court noted that "entry of people into the prisons for face-to-face communication with inmates" raises extremely serious security interests. 417 U.S. at 826, 94 S.Ct. at 2806. Likewise, in *Jones,* the prison administrators objected to the formation of a prisoners' labor union, a group whose

objectives were contrary to prison order and security, and were illegal in part. *Jones*, 433 U.S. at 126–27, 135 n. 11, 97 S.Ct. at 2538, 2543 n. 11. The defendants in *Wilson* do not raise security interests of this magnitude in support of Directive 807. Indeed, by comparison, those they claim are trivial.

The court of appeals rejected the district court's conclusion that the security interests asserted by the prison were not sufficiently weighty to justify the curtailment of Wilson's free exercise of religion, holding that such a balancing was not appropriate. *Wilson*, 761 F.2d at 927. This court's holding was based on the rejection of the district court's reliance on *Gallahan v. Hollyfield*, 670 F.2d 1345, 1346 (4th Cir.1982). *See* Typescript at 10. This court noted that under the Fourth Circuit's analysis, a regulation cannot stand if a less restrictive alternative is available, a view that is rejected in the Third Circuit. *Wilson*, 761 F.2d at 927 (*citing St. Claire*, 634 F.2d at 114). It is not at all clear that the district court's citation to *Gallahan* was intended to indicate that it enjoined enforcement of Directive 807 against Wilson because less restrictive alternatives were available. Assuming arguendo, however, that this was the basis of the district court's decision, this court should overrule the *St. Claire* holding that prison administrators need not choose the least restrictive alternative before violating a prisoner's right to free exercise of religion.

In *St. Claire*, this court stated categorically:

> The deferential review required by the Supreme Court's decisions leaves no room for a requirement that prison officials choose the least restrictive regulation consistent with prison discipline.

634 F.2d at 114. This blanket rejection of a least restrictive alternative requirement is not justified by *Pell* and *Jones*. The Supreme Court has never held that prison administrators may impose regulations that are more restrictive of first amendment rights than are necessary to promote institutional considerations. In *Pell*, the Court

held that the interest in prison security justified some restrictions on direct contact between inmates and nonprisoners, but "would not permit prison officials to prohibit all expression or communication by prison inmates...." 417 U.S. at 827, 94 S.Ct. at 2806. In *Jones*, the Court explicitly held that the regulation was no more restrictive than necessary, holding:

> If the appellants' views as to the possible detrimental effects of the organizational activities of the Union are reasonable, as we conclude they are, then *the regulations are drafted no more broadly than they need be* to meet the perceived threat—which stems directly from group meetings and group organizational activities of the Union.

*Jones*, 433 U.S. at 133, 97 S.Ct. at 2541 (emphasis added).

Even if *Pell* and *Jones* justified abandonment of the least restrictive alternative doctrine in the free speech context, this result emphatically would not be justified when a prisoner's right to free exercise of religion is abridged. Because *Pell* and *Jones* involved challenges on free speech grounds, they did not address the free exercise analove to the least restrictive alternative doctrine: namely, that states must make a reasonable accommodation of individual religious practices when that is necessary to avoid infringement on free exercise of religion. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). In *Sherbert* the Court held that South Carolina's unemployment compensation scheme could withstand judicial scrutiny only if South Carolina could demonstrate a compelling state interest in not granting sabbatarians an exemption from Saturday work. A compelling interest in the regulatory scheme as a whole is not sufficient; an accommodation must be made unless the state has a compelling reason not to do so. *Sherbert*, 374 U.S. at 406–07, 83 S.Ct. at 1795. When the challenge is raised by a prisoner, we may require that the state demonstrate something less than a compelling state interest; nevertheless, *Sherbert* requires that Wil-

558

son's interest in free exercise of religion be balanced, not against the government interest in the hair length regulation as a whole, but against the government interest in *not* granting Wilson an exemption to this regulation. This court is incorrect to hold that Directive 807 is justified as a matter of law without considering the possibility of accommodating Wilson's religious practices.

I dissent from denial of rehearing in *Wilson v. Schillinger,* and the refusal of the court to re-examine its holding in *St. Claire.* The district court's findings of fact were not clearly erroneous. The judgment of the district court should be affirmed because that court properly balanced Wilson's interest in freely exercising his religion against the state's interest in prison security. This court erred in overturning the district court's judgment on the authority of the *St. Claire* test, which has no basis in the pronouncements of the Supreme Court or in the first amendment.

HIGGINBOTHAM and SLOVITER, Circuit Judges, join in this dissent.